345 So.2d 11 (1977)
Robert O. LANDRY
v.
Flora Villere, wife of A. T. WEBER, as Administratrix of the Succession of Flora Mary, widow of Walter P. Villere, Sr.
No. 58531.
Supreme Court of Louisiana.
April 11, 1977.
Rehearing Denied May 13, 1977.
George L. Gillespie, Jr., Lyman L. Jones, Jr., Gillespie & Jones, Metairie, for plaintiff-applicant.
C. Ellis Henican, Henican, James & Cleveland, New Orleans, for defendant-respondent.
SUMMERS, Justice.
Robert O. Landry instituted this suit against the Administratrix of the Succession *12 of Flora Mary, widow of Walter P. Villere, Sr. During the progress of the trial the administratrix resigned, and the newly appointed administrator was substituted as defendant. The suit involves a claim by Landry for a $1,500 commission allegedly owed him by the decedent Flora Mary Villere because Landry sold a dragline for her. The trial court granted judgment in Landry's favor, and on appeal to the Fourth Circuit the judgment was reversed. 335 So.2d 46.
Before Walter Villere died, he and Landry worked together on various construction and demolition projects. Some time after his death, his widow Flora Mary Villere contacted Landry with a view to supervising the cleaning of the batture which her husband rented and where his operations had been conducted. Broken machinery, sheds and debris cluttered the area, and the owners of the batture were demanding a cleanup. Because of his familiarity with the location and his contacts with laborers who could perform this kind of work, Landry accepted the undertaking.
Mrs. Villere visited the work from time to time, and as the work progressed, the question arose as to what should be done with a dragline located on the batture belonging to Mrs. Villere's husband's business. At the time Mrs. Villere said she had received an offer of $12,000 for the dragline. However, the record does not disclose who made the offer or the conditions involved. After conversations at the site during January 1974, it was agreed between Mrs. Villere and Landry that he was to supervise the repair and otherwise restore the dragline, putting it in condition for sale for which he would receive a commission. These conversations occurred in the presence of Arthur Butler who was employed by Landry as a chauffeur and also as maintenance man at a motel owned and operated by Landry.
On another occasion when the question arose about the amount of the commission Landry was to receive for the sale of the dragline, Butler drove Landry and Mrs. Villere to Road Equipment Co. There Landry and Mrs. Villere ascertained that ten percent was the usual commission paid for the sale of secondhand heavy equipment such as a dragline.
In keeping with this understanding, Landry engaged men and equipment to move the dragline from the batture. Work could not be undertaken there because the dragline was in about two or three feet of water. Moving was accomplished by hauling the dragline over the levee, across the river road and onto a nearby yard where the work could be performed. The oil was drained from the engine, repairs were made, parts replaced and the dragline was scraped and painted.
Sometime in February, after the work was completed, Ralph A. Lewis of Jackson, Mississippi, learned from a local source that the dragline was for sale. He came to New Orleans and registered at Landry's motel where he remained for about a week. On several occasions during his stay Butler drove him to the yard where the dragline was located. Lewis had a mechanic with him who inspected and started the dragline. The day he bought the dragline Butler was with him and saw the dragline loaded and hauled away.
In payment of the purchase price of $15,000 Lewis delivered his draft in that amount to Landry. It was drawn on the Deposit Guaranty National Bank of Jackson, Mississippi, dated February 21, 1974, and was payable to Mrs. Walter Villere. Thereafter, on March 1, 1974, Landry delivered the draft to Mrs. Villere, and together they walked from his motel to a nearby bank where the draft, indorsed by Mrs. Villere, was deposited. On this occasion Mrs. Villere paid Landry $2,088.75, the amount he had advanced to cover the expense involved in moving, repairing and restoring the dragline, saying, according to Landry, that she would send him a $1,500 check for the commission. It may be inferred that Mrs. Villere was determined to wait until the draft was honored before paying the commission. Before she was able to make the payment, however, Mrs. Villere died on March 14, 1974.
*13 Thereafter Landry contacted Margaret Villere, a daughter-in-law of the deceased, who told him to send a bill for his commission to the attorney for the succession. Her testimony permits the inference that the deceased Mrs. Villere told her that she had hired Landry to clear the batture. Accordingly, Landry's letter of March 26, 1974 claiming the $1,500 commission was sent to the succession attorney. When neither the payment was received nor the claim approved, this suit was filed on December 4, 1974. La.Code Civil Pro. arts. 3242, 3246.
The defense was principally based upon the inconsistency of Landry's testimony relative to the time when Mrs. Villere agreed to pay him the commission. The defense proved that Mrs. Villere was away in Houston during February when Landry asserted the agreement was made.
Notwithstanding this evidence, according to his reasons for judgment, the trial judge was impressed by Arthur Butler's testimony, finding him "utterly honest and clear in his recollection that Mrs. Villere agreed to pay Mr. Landry a 10% commission." The trial judge was further of the opinion that Landry's inability to recall the exact date of the discussion with Mrs. Villere leading to the agreement to pay the ten percent commission was unimportant in light of Butler's testimony and the corroborating circumstances.
While accepting these important factual determinations of the trial judge, the Court of Appeal was nevertheless of the opinion that it was necessary, because of the proof requirements of the Dead Man's Statute, La.Rev.Stat. 13:3721-22,[1] for plaintiff to prove both the offer and acceptance which gave rise to Mrs. Villere's liability by the testimony of at least one "creditable" witness, other than himself, and other corroborating circumstances. The Court of Appeal found that the testimonial proof of the offer, and the moving, repair and sale of the dragline constituted corroborating circumstances, but Butler's testimony did not prove plaintiff's connection with the sale of the dragline.
This suit was filed, within one year of Mrs. Villere's death, as required by Section 3721(1). See footnote 1.
Considering the fact that Landry was 83 years old at the time of the trial, the trial judge understandably held that his inability to recall the exact date of the conversations with Mrs. Villere which led to the agreement to pay the commission was of "no moment." Butler's testimony that the agreement was made in January 1974 was "utterly honest and clear" on this point.
Butler, in the opinion of the trial judge, was a creditable witness as required by Section 3722. See footnote 1. There were also many corroborating circumstances established by the testimony of witnesses which are briefly outlined above. Furthermore, there were documents such as the bank statement showing the deposit by Mrs. Villere of the $15,000 draft; the statement of Road Equipment Company, Inc., itemizing *14 the parts used to repair the dragline; Landry's statement of March 1, 1974 for the funds advanced by him for the repair of the dragline; Mrs. Villere's check in payment of this March 1, 1974 statement; Landry's letter of March 26 claiming the commission shortly after Mrs. Villere's death; and the succession attorney's inquiry of Landry on May 21, 1974 relating to Landry's claim of a commission.
Butler's testimony that he heard Mrs. Villere agree with Landry that she would pay a commission of ten percent satisfies the proof requirement of Section 3722, for Butler was a "creditable witness" other than the claimant, and there were other corroborating circumstances. Proof of the agreement to pay was therefore satisfied. However, we cannot agree with the Court of Appeal's opinion that there was no proof, other than Landry's testimony, that he sold the dragline as agreed. Acting as an employee of Landry, Butler testified that on several occasions he drove the purchaser Lewis from Landry's motel to the site where the dragline had been restored, and he was present when Lewis "bought the machine and loaded it." This testimony was direct proof of Landry's connection with the sale of the dragline. It is difficult to conclude that Butler's actions to advance the sale were not carried out under Landry's authority and instructions, or that the purchaser Lewis would have delivered the draft to Landry in payment of the purchase price if he was not instrumental in bringing about the sale.
Moreover, the circumstances militate against a conclusion that Landry supervised all of this work, advanced his funds, and sold the dragline as a gratuitous undertaking. The opposite conclusion is more in keeping with the facts and common sense.
Despite the fact that Mrs. Villere told Landry when they discussed repairing and selling the dragline that she had received an offer of $12,000 for it, the reality of that offer was not otherwise established. If she did receive such an offer, she nevertheless agreed to have Landry undertake the repair in an effort to obtain a better sale price, and she accepted payment when the sale was made. The fact that the costs and the commission resulted in a net return somewhat less than the purported offer of $12,000 does not detract from Landry's entitlement to the agreed-upon commission. Supervising the clearing of the batture and repair of the dragline were valuable services rendered by Landry to Mrs. Villere on the promise that he would receive a commission.
Sections 3721 and 3722 of Title 13 of the Revised Statutes were amended in 1960 on the recommendation of the Louisiana State Law Institute to mitigate the rigors of the former rules with respect to creditors diligently attempting to enforce their claims against a deceased person. While the purpose of these sections is to protect assets of a deceased person from stale and unfounded claims which the deceased might have refuted, this is not a stale claim. It is instead a claim asserted immediately after Mrs. Villere's death, at a time when the succession representative had ample opportunity to prepare a refutation if proof were available. It is, moreover, a claim which the circumstances indicate very persuasively Mrs. Villere could not have refuted.
For the reasons assigned the judgment of the Court of Appeal is reversed, and the judgment of the trial court is reinstated and made the judgment of this Court.
NOTES
[1] La.Rev.Stat. 13:3721:

"Parol evidence shall not be received to prove any debt or liability of a deceased person against his succession representative, heirs, or legatees when no suit to enforce it has been brought against the deceased prior to his death, unless within one year of the death of the deceased:
"(1) A suit to enforce the debt or liability is brought against the succession representative, heirs, or legatees of the deceased;
"(2) The debt or liability is acknowledged by the succession representative as provided in Article 3242 of the Code of Civil Procedure, or by his placing it on a tableau of distribution, or petitioning for authority to pay it;
"(3) The claimant has opposed a petition for authority to pay debts, or a tableau of distribution, filed by the succession representative, on the ground that it did not include the debt or liability in question; or
"(4) The claimant has submitted to the succession representative a formal proof of his claim against the succession, as provided in Article 3245 of the Code of Civil Procedure. "The provisions of this section cannot be waived impliedly through the failure of a litigant to object to the admission of evidence which is inadmissible thereunder."
La.Rev.Stat. 13:3722:
"When parol evidence is admissible under the provisions of R.S. 13:3721 the debt or liability of the deceased must be proved by the testimony of at least one creditable witness other than the claimant, and other corroborating circumstances."